**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Janet Najera, <br><br>               Plaintiff, <br><br>v. <br><br>Greg Perry, et al., <br><br>               Defendants. | No. CV-23-01230-PHX-DWL <br><br>**ORDER** |

Pending before the Court is Plaintiff's motion to serve process via alternative means and for an extension of time to complete service. (Doc. 6.) To the extent the motion seeks leave to serve via alternative means, it is denied without prejudice. To the extent the motion seeks additional time to complete service, it is granted.

## BACKGROUND

On July 3, 2023, Plaintiff initiated this action. The complaint alleges that in August 2021, Defendants Greg Perry and Laura Mulloch, who were doing business as Snatch Towing, advertised a tow truck for sale on Facebook.com and represented in the ad that the tow truck had 153,837 miles on it and had been in no accidents. (Doc. 1 ¶¶ 17-18.) Relying on Defendants' representations, Plaintiff purchased the tow truck. (*Id.* ¶ 23.) In March 2022, Plaintiff attempted to sell the tow truck and was informed by a person who saw her advertisement that the mileage was not correct. (*Id.* ¶ 28.) Plaintiff has obtained a certificate of title,[1] issued October 27, 2020, which indicates that the tow truck's actual

---

[1] The complaint states that the certificate of title is attached "as Exhibit B" (Doc. 1 ¶ 11), but there does not appear to be an Exhibit B attached to the complaint.

miles were over 240,000. (*Id.* ¶¶ 11-13.) Plaintiff asserts claims under the Federal Odometer Act and the Arizona Consumer Fraud Act.

On July 7, 2023, the Court ordered that any Defendant not served by October 3, 2023 would be terminated. (Doc. 5.)

On October 2, 2023, Plaintiff filed the pending motion. (Doc. 6.) The motion asserts that service was attempted "upon Defendant, Et Al" at two addresses, 10832 W. Orangewood Ave, Glendale, AZ ("the Orangewood address") and 6815 W. Belmont Ave, Glendale, AZ ("the Belmont address). (*Id.* at 2.) The motion also requests an extension of time to serve Defendant Greg Perry. (*Id.*)

Plaintiff included in her motion a "Non-Service Declaration" from a process server. (Doc. 6 at 3-5.) The declaration is a form with various boxes, including one designated "**Upon:**" in which only one of the two Defendants, Greg Perry, is listed. (*Id.* at 3.) In a box designated "**At:**," the Orangewood address is listed as "Residence" and the Belmont address is listed as "Business." (*Id.*) Eight boxes are designated "**Attempt On:**" but only four of these appear to include service attempts; the other four appear to contain a process server's notes regarding communications with Plaintiff. (*Id.* at 3-4.)[2]

Two service attempts were made at the Belmont address and two at the Orangewood address. (*Id.*) During the first service attempt, made at the Belmont address on September 15, 2023, "the only employee [the process server] could see anywhere on the grounds was the owner Greg Perry." (*Id.* at 3.) Indeed, the process server conversed with Defendant Perry and learned that Snatch Towing was "dissolved" and that although Defendant Mulloch did not "work for him" at his "new business," it was possible that the process server could "catch her" on his business premises because Perry and Mulloch are "close friends." (*Id.* at 3-4.) Unfortunately for Plaintiff, the process server was unable to serve Defendant Perry during their conversation because she failed to bring service papers for him to that service attempt. Nevertheless, the process server only attempted service at the Belmont address one other time, on September 20, 2023 at 11:29 a.m. (*Id.* at 4.) On that

---

[2] The process server who attempted process and the process server who communicated with Plaintiff are two different people.

- 2 -

occasion, the process server spoke with an employee who stated that Defendant Perry was "not in yet today." (*Id.*) Despite having conversed with Perry at this address five days earlier and being given information suggesting that Perry might arrive there later that day, the process server never attempted service there again.

The process server attempted service at the Orangewood address, a private residence, twice—both times by honking the horn of her vehicle from the street, as the process server asserted that there was "no access" to the house because the property was "gated and locked." (*Id.* at 4.) A neighbor confirmed that Defendant Perry "resides there" and that "she knows [him] well on a neighborly basis" but Defendant Mulloch does not live there and the neighbor does not know her. (*Id.*) Vehicles were present at the residence during both attempts. (*Id.*)

## DISCUSSION

Rule 4(e) of the Federal Rules of Civil Procedure provides that an individual (with exceptions not relevant here) may be served in a judicial district of the United States by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
>   (A) delivering a copy of the summons and of the complaint to the individual personally;
>
>   (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
>   (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Rule 4.1 of the Arizona Rules of Civil Procedure details the available state-law procedures for serving process within Arizona. Pursuant to Rule 4.1(d) of the Arizona Rules, an individual may be served within Arizona using the same methods outlined in Rule 4(e)(2) of the Federal Rules. Additionally, Rule 4.1(k) of the Arizona Rules provides for alternative means of service: "If a party shows that the means of service provided in Rule 4.1(c) through Rule 4.1(j) are impracticable, the court may—on motion and without

notice to the person to be served—order that service may be accomplished in another manner," in which case "the serving party must make a reasonable effort to provide the person being served with actual notice of the action's commencement" and must, at a minimum, "mail the summons, the pleading being served, and any court order authorizing an alternative means of service to the last-known business or residential address of the person being served."

Arizona's Rule 4.1(k) requires a showing of impracticability. Impracticability in this context requires "something less than a complete inability to serve the defendant" and even "something less than the 'due diligence' showing required before service by publication may be utilized." *Blair v. Burgener*, 245 P.3d 898, 901, 903-04 (Ariz. Ct. App. 2010). In the context of Rule 4.1(k), "impracticable" simply means that the traditional means of service have proved to be "extremely difficult or inconvenient." *Id*. at 903.

As a preliminary matter, is not entirely clear whether Plaintiff seeks leave to effect service by alternative means as to Defendant Perry, Defendant Mulloch, or both. The motion states that leave is sought as to "Defendant"—in the singular—despite the existence of two Defendants in this action. (Doc. 6 at 1.) The motion later states that service has been attempted "upon Defendant, Et Al." (*Id.* at 2.) There is no Defendant in this action named "Et Al," so this appears to be an unusual reference to the styling convention of case names wherein the first party on either side is listed by name, followed by "et al," an abbreviation of the Latin term "*et alia*," meaning "and others," to indicate that at least one other party exists on that side. In this case, *Najera v. Perry et al*, the "et al" takes the place of Defendant Mulloch's name. But notably, Plaintiff's motion only requests extended time to serve Defendant Perry.[3]

For the purpose of comprehensively addressing whatever relief may have been sought in Plaintiff's motion, the Court will assume that both requests (for leave to serve by alternative means and for extended time in which to serve) were meant to apply to both Defendants.

---

[3]     Plaintiff's counsel indicated in the motion that he broke his glasses and was "almost legally blind" when proofreading the motion and apologized "for errors." (Doc. 6 at 2.)

- 4 -

As for Defendant Perry, the Court cannot conclude that serving him has proved impracticable.  Serving him at the Belmont address appears to be a viable, not-particularly-difficult way to deliver the service papers to him personally.  Indeed, that could have been done during the very first service attempt, if the process server had brought the service papers with her.  It appears it likely could have been done later on the day of the second (and final) service attempt at that address.  There is no reason to believe that continued attempts at that address (with service papers in hand) would fail.

As for Defendant Mulloch, the Court lacks sufficient information to determine whether service has proved impracticable.  Plaintiff has provided no information regarding whether Plaintiff had reasons to believe the Belmont address and/or the Orangewood address were the best addresses at which to attempt service on Mulloch and as to whether any other addresses for her are available, or as to what Plaintiff has done to attempt to locate her.

For these reasons, Plaintiff's request for leave to serve via alternative means is denied without prejudice as to both Defendants.

The Court will extend the service deadline as to both Defendants.  However, it appears that service as to Defendant Perry can be effected relatively quickly, and Plaintiff has not presented the Court with facts establishing that service as to Defendant Mulloch will take a long time.  Plaintiff had 90 days between issuance of the summons and the original service deadline (the day before which Plaintiff filed the motion for extension of time), and it is not clear that the original 90-day service window was used efficiently, as the four service attempts thus far were made in the 9-day span of time between September 15 and September 23, 2023.  An additional 30 days should be sufficient for Plaintiff to complete service.  Any further requests for extended time and/or leave to serve by alternative means must demonstrate that the 30-day extended service window was used wisely and must provide a detailed account of Plaintiff's efforts to locate and serve any Defendant not yet served at that point.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion (Doc. 6) is **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that unless the Court orders otherwise, on **February 8, 2024**, the Clerk of Court shall terminate without further notice any Defendant in this action that has not been served pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that Plaintiff's request for leave to serve via alternative means is **denied without prejudice**.

Dated this 8th day of January, 2024.

Dominic W. Lanza
United States District Judge